THE BANK OF THE UNITED STATES, Respondent, *v.* JAMES McCREERY & COMPANY, Appellant.

First Department, May 2, 1924.

Sales — action by assignee of seller to recover balance of purchase price of gaiters — gaiters were ordered for bargain sale by buyer — partial delivery was made — buyer expected complete delivery before its bargain sale — buyer paid for gaiters it sold and returned remainder — instruction to jury did not state issues clearly — error to instruct jury that they should determine from their knowledge of business affairs whether parties agreed to return of goods — jury should have been instructed that buyer's contention was that it had right to return unsold goods — court should have instructed jury that president of plaintiff's assignor was interested witness — evidence of negotiations between parties after assignment was admissible.

In an action by the assignee of the seller of goods to recover the balance due on the purchase price, it appeared that the buyer, the owner of a department store, ordered several thousand pairs of gaiters in anticipation of a bargain sale it was about to have; that the seller delivered a part of the gaiters before

the sale and up to the time of the sale the buyer expected that a complete delivery would be made, although it objected at the time of the first delivery on the ground that all of the gaiters were not delivered; that the balance of the gaiters were never delivered and at the sale a small number of the gaiters purchased were sold; that the buyer paid for the gaiters sold and returned the balance to the seller; and that the evidence presented a very close question of fact.

*Held*, that the case should have been submitted to the jury in a concise and comprehensive charge and the jury should have been instructed that the seller failed to perform its contract when it delivered a portion only of the goods contracted for, and admitted that it failed to deliver the balance, and that the contention that said default was waived should have been fully set forth in the charge.

It was error for the court to charge that it was for the jury to determine from their experience and knowledge of " business affairs " whether or not a contract was made subsequent to the contract of sale whereby the buyer could return the balance of the goods. The statement by the court might have been permissible if it had been given in connection with other parts of a comprehensive charge, but the jury, under the circumstances of this case, should not have been told to decide the case on their knowledge of business affairs, for the case should have been decided upon the evidence.

The court should have instructed the jury that the buyer's contention was that it had the right under sections 125 and 126 of the Personal Property Law to return the balance of the goods not sold.

It was error for the court to instruct the jury that the president of plaintiff's assignor, the seller of the goods, was not an interested witness.

Evidence of conversations with reference to negotiations between the parties hereto after the assignment of the account to the plaintiff tending to show that after the goods had been returned by the seller to the buyer in an attempt to make delivery, the plaintiff instructed the buyer to place them in storage.

APPEAL by the defendant, James McCreery & Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 25th day of May, 1923, upon the verdict of a jury. The defendant appeals upon both the facts and the law.

*Gould & Wilkie* [*R. L. von Bernuth* of counsel; *Charles G. Keutgen* with him on the brief], for the appellant.

*Jacobson & Pollock* [*H. Louis Jacobson* of counsel], for the respondent.

MARTIN, J.:

This action was brought upon an assigned claim for the price of goods sold and delivered. Two counts were set up in the complaint, but the first having been withdrawn upon the trial, the plaintiff's recovery was only upon the second. Appellant contends that the issues were so beclouded by the charge and the denials of its requests to charge, that there was no real submission of the issues to the jury, and that there were errors in rulings on evidence and in the charge.

On February 1, 1921, the defendant, James McCreery & Company, a department store, ordered from the plaintiff's assignor, American Gaiter Company, a manufacturer of gaiters, 3,390 pairs of gaiters or spats. A written memorandum was made at the time setting forth the particular assortment of styles and patterns which was ordered and providing for shipment on the same day, February 1, 1921. Relying upon this order, the defendant advertised in the newspapers a special sale of spats, to take place on February 11, 1921, known as the bargain sale. The American Gaiter Company on February 3 or 4, 1921, delivered to the defendant 2,241 instead of 3,390 pairs and none other were ever tendered. Those delivered were not in accordance with the stated assortment. At the time when the 2,241 pairs were delivered it is conceded that the defendant promptly objected to the delivery and that, up to the time of the bargain sale at least, it was intended by both parties that the remainder of the order should be delivered. The sale was held on February 11, 1921, in accordance with the advertisement. At this sale the defendant sold a total of 1,000 or 1,500 pairs of spats. Of these only 198 pairs were out of the lot of 2,241 pairs delivered by plaintiff's assignor, the rest being from defendant's stock. The 198 pairs so sold were paid for by the defendant. It is undisputed that up to the time of the bargain sale the defendant's information was that the American Gaiter Company was making efforts to complete the delivery and intended to do so.

Between the date of delivery and the date of said sale, one or more telephone conversations took place between Mr. May, the president of the American Gaiter Company, and Mr. Nearing, the shoe buyer for the defendant. Concerning these, the testimony is conflicting. Mr. May says that there was only one conversation; that it took place about February sixth or seventh, which would be before the bargain sale; that in this conversation Mr. Nearing complained about the spats and he answered that he would accept the return of the 2,241 pairs of gaiters delivered, provided all were returned exactly as shipped, but that he was going to deliver the remainder of the order. The witness did not say that Mr. Nearing acquiesced in this proposition.

Mr. Nearing says that there were several conversations; that he told Mr. May he needed these goods for the bargain sale; that, day after day Mr. May kept assuring him the remainder of the order would be delivered; that only after the bargain sale did Mr. May tell him delivery could not be completed and Mr. May then told him it would be all right to pay for the spats which had been sold and return those remaining unsold.

It is undisputed that, soon after the bargain sale, the defendant

returned to the American Gaiter Company all of the 2,241 pairs except the 198 pairs sold. It is not disputed that the 2,043 pairs were returned. The defendant paid for the 198 pairs so sold and the American Gaiter Company accepted the payment. The payment and return took place about February 17, 1921.

About two weeks later, on March 1, 1921, the American Gaiter Company again delivered these spats to the defendant. Testimony as to further attempts by the defendant to dispose of the gaiters was excluded but it does appear that they were kept intact in defendant's place of business in the original cases for over a year; that they were then repacked, checked, and, on March 1, 1922, sent to a storage warehouse for the account of the plaintiff; that the warehouse receipt was in plaintiff's possession but was returned by plaintiff to defendant. The evidence was sufficient to establish *prima facie* that the gaiters in the warehouse were the same as those shipped back to defendant by the American Gaiter Company, and, therefore, were the same as those returned by the defendant.

In March, 1921, the American Gaiter Company became a bankrupt. Mr. Nearing testified that following an interview with Mr. Planteroth at the plaintiff bank, he had a number of telephone conversations with him at intervals of about a month up to July or August, 1921, at each of which he asked what the defendant was to do with the gaiters, and was informed each time to hold the gaiters as they belonged to the plaintiff and should not be sent to the receiver or trustee in bankruptcy of the American Gaiter Company.

Early in the trial of plaintiff's case, Mr. Planteroth denied that he remembered any telephone conversations, but would not swear that there had not been any such conversations. Later, on rebuttal, he denied any such conversations had taken place.

By the time these telephone talks ended the gaiters had become worthless, although there was a good market for them when the bank is alleged to have made its first demand.

We believe there were very close questions of fact in this case which should have been submitted to the jury in a concise and comprehensive charge. The jury should have been instructed that the American Gaiter Company failed to perform its contract when it delivered a portion only of goods contracted for, and admitted it failed to deliver the remaining installment.

It now asserts that this default was waived. That contention should also have been fully set forth in the charge. The defendant, however, asserts that it was not waived.

The court, in a few words, told the jury what it believed the defendant asserted to be its contention. Defendant's counsel

immediately called the attention of the court to the fact that the statement of defendant's case made to the jury was not in accordance with the evidence and was not the contention of the defendant. The court refused to accept the suggestion and insisted on placing the matter before the jury as it understood the case. The court said: "Now, it is claimed on the part of the defendant that after the contract was entered into between them, and after the 2,241 pairs were delivered, the plaintiff agreed that the defendant might sell as many as they could and return the balance, provided the defendant paid for such goods as had been sold by them."

Counsel for the defendant says that this was an erroneous statement; that defendant's contention was entirely different and was well within the decisions. Defendant maintained that after an installment of the goods had been delivered and the sale had taken place, the defendant on learning that the American Gaiter Company would not deliver the remainder of the goods contracted for, paid for the goods sold and returned the portion unsold, and that under the Personal Property Law and the decisions on the subject, it was well within its right in so doing.

The defendant contends that the case as outlined to the jury would certainly not appeal to the business sense of the jury which the court asked it to exercise. The court said: "But if on the other hand, you determine from your own experience and your knowledge of business affairs, that no such contract was ever entered into between these parties    *    *    *    then your verdict ought to be for the plaintiff in the sum of $2,905.31."

Such a statement may be permissible if given in connection with other parts of a comprehensive charge, but the jury under the circumstances of this case should not have been told to decide the case on their "business sense" for the case should have been decided upon the evidence and the jury should have been so instructed. Defendant also asserts that parts of the charge were contradictory and that the issues were not placed before the jury with that degree of clarity to which defendant was entitled.

The court charged the jury as follows: "But, as I said to you before, if you believe that there was a contract entered into subsequently whereby the plaintiff agreed to take back whatever was left after the sale, then the plaintiff cannot recover and your verdict ought to be for the defendant. But if, on the other hand, you believe no such agreement was entered into, then your verdict ought to be for the plaintiff for the amount I have already mentioned."

It appears, therefore, that at least three distinct inconsistent and contradictory propositions were placed before the jury. After

each had been stated, the jurors were told that if they found the facts as defendant alleged, the verdict should be for the defendant. The contention of the defendant was that the contract had been broken by the American Gaiter Company because of the failure of the American Gaiter Company to make the deliveries as agreed and that it was not necessary to establish a new contract to entitle it to return the goods.

Subdivision 1 of section 125 of the Personal Property Law (as added by Laws of 1911, chap. 571) provides as follows:

" 1. Where the seller delivers to the buyer a quantity of goods less than he contracted to sell, the buyer may reject them, but if the buyer accepts or retains the goods so delivered, knowing that the seller is not going to perform the contract in full, he must pay for them at contract rate.  If, however, the buyer has used or disposed of the goods delivered before he knows that the seller is not going to perform his contract in full, the buyer shall not be liable for more than the fair value to him of the goods so received."

Subdivision 1 of section 126 of the Personal Property Law (as added by Laws of 1911, chap. 571) provides:

" 1. Unless otherwise agreed, the buyer of goods is not bound to accept delivery thereof by installments."    These provisions are also known as the Sales of Goods Act.

It is apparent, therefore, that the charge did not fairly set forth the contentions of the defendant nor properly place the issues before the jury.

In *Kirshman* v. *Crawford-Plummer Co.* (165 App. Div. 259, 262) this court, after quoting subdivision 1 of section 125 of the Personal Property Law (*supra*), said: " A more difficult question to determine is whether, in marking the 139 suits and putting them on sale the defendant ' used or disposed of ' the suits so as to make it liable under the section of the Personal Property Law above quoted for the fair value to it of the gooods received.   I am of the opinion, however, that in the statute quoted the words ' used or disposed of ' mean something more than merely accepting.   It contemplates a situation in which the buyer cannot return the goods to the seller.   If the defendant put these suits on sale relying upon the plaintiff to complete the performance of his contract, and left them on sale relying upon the assurance of Markowitz that the contract would be performed in full, it was not thereby precluded from returning within a reasonable time the suits not sold, and, therefore, is liable only for those suits which it was unable to return. These were questions which should have been submitted to the jury with proper instructions, and for that reason the order setting aside the directed verdict should be affirmed."

Another serious error was committed in the charge to the jury that Mr. May was not an interested witness. Mr. May was the president of the corporation that sold the goods to the defendant and it was through him the negotiations were conducted before and after the sale. He was in every sense interested and the jury should have been so instructed.

The court also refused to permit in evidence conversations with reference to negotiations after the date upon which the assignment of the account was made to the plaintiff. If the contention of defendant was correct, it had a right to show that after the goods had been returned, it placed them in storage as instructed by plaintiff and no longer had them in its possession or under its control.

For the reasons stated, there should be a new trial. The judgment should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., MERRELL and FINCH, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.